



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, et al., | ) CV 01-9358 FMC (Ex) |
| | ) |
| | ) **ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT;** |
| Plaintiff, | ) |
| | ) |
| vs. | ) **AND** |
| | ) |
| REPLAY TV, et al., | ) **ORDER GRANTING COPYRIGHT OWNERS' MOTION TO DISMISS ACTION.** |
| | ) |
| Defendants. | ) |
| | ) |
| and consolidated actions. | ) |

This matter is before the Court on two related Motions: the Newmark Plaintiffs' Motion for Leave to Amend the Complaint (docket #559), and the Copyright Owners' Motion to Dismiss the present action (docket #557). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for January 12, 2004, is removed from the Court's calendar. For the reasons set forth below, the Court **denies** Plaintiffs' Motion and **grants** the Copyright Owners' Motion.

571

## I. Introduction

The Copyright Owners are a number of television and film companies in the entertainment industry.[1] The Copyright Owners sued SONICblue, Inc., and its wholly owned subsidiary, RePlayTV, Inc., asserting a variety of copyright infringement claims, including contributory and vicarious copyright infringement, based on the development and sale by RePlayTV of a digital video recorder ("DVR"), which enabled consumers to make digital copies of copyrighted television programs. The DVRs are equipped with commercial-skipping features, and they may be used to send copies of televised programs to other RePlayTV owners via high-speed internet connections. The vicarious and contributory infringement claims were based on the alleged direct copyright infringement committed by the owners of the RePlayTV DVRs. (*See, e.g., Paramount Compl.*, No. 01-09358, ¶ 64 (regarding contributory infringement); ¶ 71 (regarding vicarious infringement)).

Subsequent to the filing of these claims, SONICblue filed for bankruptcy,

---

[1] Specifically, the Copyright Owners are Paramount Pictures Corp. ("Paramount"); Disney Enterprises, Inc. ("Disney"); National Broadcasting Company ("NBC"); NBC Studios, Inc. ("NBC Studios"); Showtime Networks, Inc. ("Showtime"); The United Paramount Network ("UPN"); ABC, Inc. ("ABC"); Viacom International, Inc. ("Viacom"); CBS Worldwide, Inc. ("CBS Worldwide"); CBS Broadcasting, Inc. ("CBS"); Time Warner Entertainment Company, L.P. ("TWE"); Home Box Office ("HBO"); Warner Brothers ("Warner Brothers"); Warner Brothers Television ("WBT"); Time Warner, Inc. ("TWI"); Turner Broadcasting System, Inc. ("Turner Broadcasting"); New Line Cinema Corp. ("New Line"); Castle Rock Entertainment ("Castle Rock"); The WB Television Network Partners, L.P ("WBT Network"); Metro-Goldwyn-Mayer Studios, Inc. ("MGM"); Orion Pictures Corp. ("Orion"); Twentieth Century Fox Film Corp. ("Fox"); Universal City Studios Productions, Inc. ("Universal"); Fox Broadcasting Co. ("FBC"); Columbia Pictures Industries, Inc. ("Columbia Industries"); Columbia Pictures Television ("Columbia Television"); Columbia Tristar Television ("CTTV"); and TriStar Television, Inc. ("TriStar Television").

The Copyright Owners are Plaintiffs in four of the five consolidated actions (the *RePlayTV* actions), but are Defendants in one of the consolidated actions (the *Newmark* action).

1   and the Court stayed the consolidated actions.  On April 25, 2003, with the
2   Bankruptcy Court approval, SONICblue sold its RePlayTV assets to a third
3   party, Digital Networks North America, Inc. ("DNNA").  DNNA's new
4   RePlayTV model does not include the two features which gave rise to the
5   present action.

6       Following the sale, the Copyright Owners stipulated to a voluntary
7   dismissal, without prejudice, of all claims against SONICblue.  On November
8   12, 2003, the Court entered an order on this stipulation.

9       Prior to SONICblue's bankruptcy, five owners of RePlayTV DVRs (the
10  *Newmark* Plaintiffs) sought declaratory relief regarding their rights to use their
11  DVRs.  The Copyright Owners moved to dismiss the *Newmark* Plaintiffs'
12  claims. The Court considered the Motion, framing the relevant issue presented
13  as follows:  Does a plaintiff present an actual "case or controversy" under the
14  Declaratory Judgment Act and Article III where the plaintiff's conduct is
15  alleged, in a separate action against a third party for contributory and/or
16  vicarious copyright infringement, to be direct copyright infringement?  Upon
17  consideration of this issue, the Court concluded that a plaintiff does present an
18  actual case or controversy under those circumstances.

19      With the present Motions, the Court must again consider this question,
20  this time taking into account the effect of the dismissal of the *RePlayTV* actions
21  for contributory and/or vicarious infringement and the Copyright Owners'
22  covenant not to sue the *Newmark* Plaintiffs for their use of the DVRs.  Under
23  these changed circumstances, the Court concludes that the *Newmark* Plaintiffs
24  no longer present an actual case or controversy.  Therefore, the claims are moot,
25  and the Court lacks subject matter jurisdiction over the *Newmark* Plaintiffs'
26  claims; therefore, those claims must be dismissed.

27      The Court must also consider the issue of whether Plaintiffs should be
28  permitted to amend the Complaint to substitute other owners of RePlayTV

1    DVRs as class-action plaintiffs.   Ultimately, the Court concludes that the

2    proposed Plaintiffs also fail to present an actual case or controversy.  For this

3    reason, the Court lacks subject matter jurisdiction over the claims asserted in

4    the proposed First Amended Complaint; therefore, the proposed amendment

5    will not be granted under Fed. R. Civ. P. 15(a) because it is futile.

6

7                          **II. Subject Matter Jurisdiction**

8          Subject matter jurisdiction may be considered by the Court at any time.

9    *See* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties

10   or otherwise that the court lacks jurisdiction of the subject matter, the court

11   shall dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583,

12   119 S.Ct. 1563 (1999) ("[S]ubject-matter delineations must be policed by the

13   courts on their own initiative even at the highest level.")

14         The claims of the *Newmark* Plaintiffs are brought pursuant to the

15   Declaratory Judgment Act, which permits a federal court to "declare the rights

16   and other legal relations" of parties to "a case of actual controversy." 28 U.S.C.

17   § 2201. This "actual controversy" requirement is the same as the "case or

18   controversy" requirement of Article III of the United States Constitution. *See*

19   *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40, 57 S. Ct. 461, 463 (1937).

20   Therefore, the question of justiciability, and therefore of subject matter

21   jurisdiction, is the same under § 2201 as it is under Article III.

22         The United States Supreme Court has given guidance as to when "an

23   abstract" question becomes a "controversy" under the Declaratory Judgment

24   Act:

25              The difference between an abstract question and a "controversy"

26              contemplated by the Declaratory Judgment Act is necessarily one

27              of degree, and it would be difficult, if it would be possible, to

28              fashion a precise test for determining in every case whether there

                                          4

is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941).

Applying this standard, the Ninth Circuit has held that something less than an "actual threat" of litigation is required to meet the "case or controversy" requirement; instead, courts must focus on whether a declaratory plaintiff has a "reasonable apprehension" that he or she will be subjected to liability. *Societe de Conditionnement en Aluminum v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 944 (9th Cir. 1981). In *Societe*, the court first noted that the parties' assumption that a declaratory plaintiff must be subject to an "actual threat" was incorrect:

We infer from the arguments of the parties that they agree that an actual threat of litigation must be made by the [declaratory defendant] for a case or controversy to exist. We assume that the district court applied this standard in reaching its decision. We conclude that the Constitution has a much lower threshold than this standard would suggest.

*Id.* The Ninth Circuit then went on to hold that the determination of whether a case or controversy exists must focus on the reasonable apprehension of the declaratory plaintiff:

A better way to conceptualize the case or controversy standard is to focus on the declaratory judgment plaintiff. An action for a declaratory judgment that a patent is invalid, or that the plaintiff is not infringing, is a case or controversy if the plaintiff

5

1     ·    has a real and reasonable apprehension that he will be subject to

2         liability if he continues to manufacture his product.

3   *Id.*

4       Other cases make it clear that no explicit threat of litigation is required

5   to meet the "case or controversy" requirement. *See also K-Lath v. Davis Wire*

6   *Corp.*, 15 F. Supp. 2d 952, 958 (C.D. Cal. 1998) (noting that a plaintiff seeking

7   declaratory judgment must show "an explicit threat or *other action*" that creates

8   a reasonable apprehension that the plaintiff will face an infringement suit)

9   (emphasis added); *Intellectual Property Development v. TCI Cablevision of*

10  *California, Inc.*, 248 F.3d 1333, 1340 (Fed. Cir. 2001) ("other action" is

11  sufficient), *cert. denied*, 534 U.S. 895, 122 S. Ct. 216 (2001); *Guthy-Renker Fitness*

12  *v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264 (C.D. Cal. 1998) (same).

13      The Court previously concluded that the *Newmark* Plaintiffs had the

14  required "reasonable apprehension" in light of the Copyright Owners' vicarious

15  and contributory copyright infringement claims against SONICblue and

16  RePlayTV.  The Court reasoned that in order for the Copyright Owners to

17  prevail on these claims, it would be necessary to determine that ultimate

18  consumers of the DVRs (such as the *Newmark* Plaintiffs) engaged in direct

19  copyright infringement, and that this fact was sufficient to raise a reasonable

20  apprehension that they would be subject to liability.  This was the sole rationale

21  for the Court's denial of the previous Motion to Dismiss.

22      In the absence of viable claims against SONICblue or RePlayTV, any

23  "reasonable apprehension" must be based on another set of facts.  The reasons

24  advanced in connection with the Motion for Leave to Amend, discussed in the

25  next section, are insufficient in light of the standard articulated above.

26      The *Newmark* Plaintiffs make a distinction between a pure question of

27  standing (i.e., one in which a plaintiff never had standing) and mootness (i.e.,

28  one in which a plaintiff had standing, but whose claims are now moot).  To be

sure, these doctrines are analytically distinct. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 189-94, 120 S. Ct. 693 (2000). However, it is clear that, whether measured in terms of lack of standing or of mootness, the case or controversy requirement continues throughout all stages of the action. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055 (1997) ("To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") Therefore, the distinction made by Plaintiffs is of little relevance to the Court's current inquiry.

The *Newmark* Plaintiffs argue that this distinction changes the burden of establishing whether the threatened harm is likely to occur again. They cite to *Friends of the Earth* for the proposition that the Copyright Owners bear a "heavy burden" of establishing that the claims of the *Newmark* Plaintiffs are moot based on the voluntary actions of the Copyright Owners in dismissing the claims against SONICblue and RePlayTV. In *Friends of the Earth*, environmental groups brought claims under the Clean Water Act against a permit holder. *Id.* The Supreme Court held that the action was not rendered moot by the permit holder's compliance with the permit limits or the closing of a polluting facility absent a showing by the permit holder that violations could not reasonably be expected to recur. *Id.* at 189-90. The *Newmark* Plaintiffs would impose a similar burden on the Copyright Owners to prove that the conduct that gave rise to the *Newmark* Plaintiffs' claims cannot reasonably be expected to recur. In other words, they are seeking assurances that the Copyright Owners will never again file a lawsuit that implicates their use of the RePlayTV DVRs.

The authority cited does not support Plaintiffs' position. Examination of *Friends of the Earth* reveals that the Supreme Court was addressing the question of whether a plaintiff's claims were mooted by a defendant's cessation

of allegedly *illegal* conduct. *See id.* at 189. The Supreme Court relies on *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070 (1982), and *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S. Ct. 361 (1968). Both of these cases rely on a passage in *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894 (1953), which states: "Mere voluntary cessation of allegedly illegal conduct does not moot a case . . . ." *Id.* at n.10. This doctrine is therefore limited to situations in which a defendant, faced with a lawsuit, voluntarily ceases its allegedly illegal conduct. In the absence of authority applying this doctrine to cases in which a plaintiff dismisses claims in a lawsuit, rather than merely refrains from illegal conduct, the Court declines to extend *Friends of the Earth* to the present circumstances.

In any event, the Copyright Owners have covenanted not to sue the *Newmark* Plaintiffs, further resolving the present controversy. Plaintiffs argue that the Copyright Owners' covenant not to sue does not resolve the present case or controversy, observing that normally a covenant not to sue is a bilateral agreement, supported by consideration, as part of a settlement agreement between parties to litigation. Here, the Copyright Owners have made a unilateral covenant not to sue that is not supported by consideration, raising questions as to its enforceability. Plaintiffs contend that these unresolved questions as to the covenant's enforceability, in turn, lend support to their argument that their claims are not moot. The Court is unpersuaded by Plaintiffs' argument.

The Court is guided by *Prudent Publishing Co., Inc. v. Myron Mfg. Corp.*, 722 F.Supp. 17, 21-22 (S.D.N.Y. 1989). In that case, the court held in a copyright action that an affidavit evidencing a party's lack of intent to pursue the claim, coupled with dismissal of the claim, was sufficient to put an end to a case or controversy, moot the claim, and divest the court of jurisdiction over the matter. *Id.* The court observed that "it is not enough that there may once

1  have been a controversy at the time the suit was commenced if subsequent

2  events have put an end to the controversy." *Id.* (citing, *inter alia*, 10 C. Wright

3  & A. Miller, Federal Practice and Procedure, § 2757 at 766-67 (1973 ed.)); *see*

4  *also Arizonans for Official English*, 520 U.S. at 67 (an actual controversy must be

5  present at all stages of review). Such is the case here. As the Court held

6  previously, the *Newmark* Plaintiffs had standing to maintain their claims for

7  declaratory relief. Howver, a subsequent event, the dismissal of the *RePlayTV*

8  actions, put an end to the controversy.

9       The *Newmark* Plaintiffs' claims have been mooted by the dismissal of the

10  *RePlayTV* actions and the Copyright Owners' covenant not to sue. In the

11  absence of an actual case or controversy, the Court is without subject matter

12  jurisdiction and is constitutionally constrained from further considering the

13  issues presented by the *Newmark* Plaintiffs' claims. Accordingly, the Copyright

14  Owners' Motion to Dismiss is **granted.**

15

16                    **III. Motion for Leave to Amend**

17       Plaintiffs argue that they should be permitted to amend the complaint to

18  substitute other Plaintiffs as class representatives of consumers who purchased

19  RePlayTV DVRs with the commercial-skipping and send-show features.

20       Under Federal Rule of Civil Procedure 15(a), plaintiff may amend the

21  complaint once, as a matter of right, prior to the filing of a responsive pleading.

22  *Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997) (citing Fed. R.

23  Civ. P. 15(a)). Once the complaint has been answered, or a responsive pleading

24  has been filed, further amendments may be made "only by leave of court or by

25  written consent of the adverse party." Fed. R. Civ. P. 15(a). Absent written

26  consent of the adverse party, leave to amend lies "within the sound discretion

27  of the trial court." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir.

28  1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). In

exercising its discretion, the court shall grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). After a responsive pleading has been filed, "leave to amend should be granted unless amendment would cause undue prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Martinez*, 125 F.3d at 785. In making its determination, "a court must be guided by the underlying purpose of Rule 15 — to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Programs*, 833 F.2d at 186 (quoting *Webb* at 979). In adhering to Rule 15's policy favoring amendments, the court should apply that policy with "extreme liberality." *Id.*

The futility of the proposed amendment precludes the Court from granting leave to amend. Where a proposed amendment leaves the Court without subject matter jurisdiction to hear the claims presented, it is futile. Here, the proposed Plaintiffs lack standing to bring a claim for declaratory relief.

As is explained more fully in the previous section, in order to maintain a claim for declaratory relief, a plaintiff must have a "case or controversy" with a defendant. As set forth with greater specificity above, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Maryland Casualty Co.*, 312 U.S. at 273.

There is no doubt that the parties have adverse legal interests. In their *RePlayTV* Complaints, the Copyright Owners explained their position that use of certain features of the RePlayTV DVR amounted to copyright infringement. As noted in Plaintiffs' papers, the proposed Plaintiffs are using their RePlayTV DVRs in ways that were the basis for the Copyright Owners' allegations of infringement. However, the mere existence of a disagreement between the parties does not amount to a case or controversy.

In its previous Order, the Court concluded that there need not be an explicit threat of litigation against the declaratory relief plaintiff in order to establish a case or controversy. *See K-Lath v. Davis Wire Corp.*, 15 F. Supp. 2d 952 (C.D. Cal. 1998) (noting that a plaintiff seeking declaratory judgment must show "an explicit threat or *other action*" that creates a reasonable apprehension that the plaintiff will face an infringement suit) (emphasis added). The Court did not decide the parameters of what "other action" might raise a reasonable apprehension; rather, the Court merely concluded that the Copyright Owners' claims against SONICblue and RePlayTV constituted sufficient "other action" because the claims in the *RePlayTV* cases required a determination that the *Newmark* Plaintiffs were engaging in infringing activity.

Therefore, in considering the Motion for Leave to Amend, the Court must determine if the Copyright Owners have engaged in sufficient "other action" so as to raise in the proposed Plaintiffs a reasonable apprehension that they might face liability. Acknowledging that there is no present threat of litigation, Plaintiffs argue that a number of the Copyright Owners' activities raise such an apprehension: 1) the Copyright Owners' failure to covenant not to sue the proposed plaintiffs; 2) a newspaper report about an industry summit; 3) actions by record industry officials (including "sister companies" of the Copyright Owners) in suing consumers; 4) the Copyright Owners' "position" that the use of the DVRs' features constitute copyright infringement; 5) DNNA's removals of the offending features in response to the Copyright Owners' "concerns". The Court considers each argument.

First, the Copyright Owners' failure to covenant not to sue the proposed plaintiffs does not raise an objectively reasonable apprehension of liability. Although the Copyright Owners have stopped short of promising never to sue the RePlayTV DVR users, they have engaged in no action that even hints at a present intent to sue them. The relevant standard is whether there is a

1    "substantial controversy . . . of sufficient ***immediacy and reality*** to warrant the

2    issuance of a declaratory judgment." *Maryland Casualty Co.*, 312 U.S. at 273

3    (emphasis added).  That standard is simply not met by virtue of the Copyright

4    Owners' refusal to promise never to sue.

5          Second, the newspaper article does not raise an objectively reasonable

6    apprehension of suit.  The Los Angeles Times article, published November 9,

7    2003, and authored by Patrick Goldstein, is entitled "*Is Hollywood Failing to See*

8    *the Big Picture?*"  (A copy of the article is attached as Exh. J to the Motion.)  In

9    the article, Goldstein reports about an "anti-piracy summit meeting" of "top

10    Hollywood studio brass," including, apparently, representatives of some of the

11    Copyright Owners.[2]  During the meeting, the "chief architect of the record

12    industry's anti-piracy strategy," Zach Horowitz, predicted that file-sharing

13    services (which had cut into record company profits) would have an adverse

14    effect on the studios as they began to offer movies and television shows, and

15    recommended that studios act soon if they planned on filing lawsuits.  There

16    ensued a disagreement on the proper time to sue: The President of the Motion

17    Picture Association of America, Jack Valenti, advocated the exploration of more

18    advanced technological copy protection, but News Corporation Chairman Peter

19    Chernin urged the studio chiefs to follow the lead of the music companies and

20    move ahead with lawsuits.  According to the article, pursuant to a unanimous

21    hand-raised vote, the studios instructed Valenti "to begin preparations for

22    lawsuits aimed at avid file sharers, be they junior high schoolers, computer-

23    savvy techno geeks or grandmothers."  The events reported in this article lend

24    support to the notion that the threat of widespread copyright infringement,

25

26         [2] Reported attendees included Viacom Entertainment Group Chairman Jonathan

27    Dolgen, Time Warner Entertainment Group Chairman Jeff Bewkes, Warner Brothers
Chairman Barry Meyer, MGM Chairman Alex Yemenidjian, and Sony Entertainment Vice

28    Chairman Yair Landau.

aided by internet file sharing, is of paramount concern to the entertainment industry. But, again, this concern is simply not sufficient to raise an objectively reasonable apprehension of liability of "sufficient immediacy and reality as to warrant an entry of declaratory judgment. *Maryland Casualty Co.*, 312 U.S. at 273 (emphasis added). The article itself says of possible lawsuits against file sharers: "[n]o one will confirm a specific timetable."

Third, the actions of the record industry, even of "sister companies" of the Copyright Owners, are irrelevant to the Court's inquiry. The thrust of Plaintiffs' argument is that the present actions of nonparties directed toward other nonparties show the future actions of the film and television industry toward the proposed Plaintiffs. Although Plaintiffs may ultimately be shown to be correct, the record industry's present actions against others is insufficient. As noted previously, Plaintiffs must present a "substantial controversy . . . of sufficient *immediacy and reality* to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.*, 312 U.S. at 273 (emphasis added).

Finally, neither the Copyright Owners' failure to retract its position that the use of the commercial-skipping and send-show features of the RePlayTV DVRs constitutes copyright infringement, nor DNNA's voluntary removal of these features from newly manufactured DVRs, place Plaintiffs in reasonable apprehension that they will be subjected to liability. The Copyright Owners have an interest in protecting the value of their intellectual property; they need not capitulate their position in order to be free from a declaratory relief action. Article III cases or controversies are created through actions, not through beliefs. Likewise, DNNA's decision to remove the offending features from its product, whether motivated by agreement with the Copyright Owners' position regarding infringement or out of the desire to protect itself from costly lawsuits, cannot create a reasonable apprehension of liability for Plaintiffs.

The proposed Plaintiffs are without standing to assert their claims for

declaratory relief against the Copyright Owners; therefore, the Court is without jurisdiction to hear those claims. Because the Court would be without subject-matter jurisdiction over the proposed claims, those claims are futile, and leave to amend pursuant to Rule 15(a) may not be granted. Accordingly, the Court **denies** the Motion for Leave to Amend.

## IV. Conclusion

To be sure, the battle between copyright owners to protect the value of their works, and technological innovators and consumers over freedom of access to those copyrighted works, will continue to rage on in this electronic age. This issue is, without a doubt, a subject of lively public debate. But the Court's role in this battle is limited by its Article III powers to adjudicate only "cases or controversies." A subject can be a topic of intense public debate and disagreement and yet not become a "case or controversy" as defined by the Constitution. Here, the Court has determined that there is no live case or controversy, and that it is therefore without power to hear the remaining claims. The remaining claims in this action are dismissed for lack of subject matter jurisdiction.

The Motion to Dismiss is **granted**, and the Motion for Leave to Amend is **denied.**

Dated: January 9, 2004

FLORENCE-MARIE COOPER
UNITED STATES DISTRICT JUDGE

14